IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV601-C
3:97CR40-11

| | |
|---|---|
| JOSE NACACIO AMU, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment, filed April 12, 2004; Petitioner's Motion for Leave to Supplement, filed June 18, 2004; and Petitioner's Motion to File Amended 2255 Motion, filed July 23, 2004.

## PROCEDURAL HISTORY

On April 2, 2001, Petitioner was named in three counts of an eight-count superceding Bill of Indictment. Count One charged Petitioner with conspiring to possess with intent to distribute at least five kilograms of cocaine and at least 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b) and 846. Count Seven charged Petitioner with conspiring to import at least 5 kilograms of cocaine and at least 50 grams of cocaine base in violation of 21 U.S.C. §§ 952, 960, and 963. Count Eight charged Petitioner with forfeiture of proceeds obtained through the controlled substance violations in violation of 21 U.S.C. § 853.

On June 11, 1998, Petitioner pled guilty, pursuant to the terms of his plea agreement, to

Counts One and Seven. On September 9, 1998, Petitioner moved to have Lyle Yurko withdraw as his counsel. On September 10, 1998, this Court granted Petitioner's motion. On September 22, 1998, Keith Stroud was appointed to represent Petitioner. On June 24, 1999, Petitioner filed a motion to withdraw his guilty plea. After conducting a hearing, on December 6, 1999, this Court denied Petitioner's motion.[1] Through another new counsel,[2] Petitioner filed another motion to withdraw his guilty plea on January 30, 2001. After a hearing on February 14, 2001, this Court found that Petitioner had presented evidence supporting a credible assertion of innocence and therefore he was allowed to withdraw his guilty plea. On April 2, 2001, the Government filed its third superceding indictment.

On May 30, 2001, after trial by jury, Petitioner was convicted on both substantive counts. The jury returned a special verdict form setting forth that they found Petitioner guilty of conspiracy to possess with intent to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine. In addition, the jury found Petitioner guilty of conspiracy to import 5 kilograms or more of cocaine. This Court sentenced Petitioner to life imprisonment.

Petitioner directly appealed his sentence and conviction to the United States Court of Appeals for the Fourth Circuit. On appeal Petitioner argued that: 1) the district court erred in admitting evidence of Petitioner's detention in 1996; 2) the district court erred by admitting an audio tape conversation; 3) Counts One and Seven should have been dismissed because the

---

[1] Petitioner appealed the December 6, 1999, Order but the appeal was dismissed when this Court ultimately allowed Petitioner to withdraw his guilty plea.

[2] After Petitioner filed his first motion to withdraw his guilty plea through his replacement counsel Mr. Keith Stroud, he sought to have Mr. Stroud removed as his counsel. The Court granted Petitioner's motion on May 3, 2000.

2

underlying statutes were unconstitutional; 4) the district court should have used the drug quantity findings of the jury when applying the sentencing guidelines; 5) the evidence was insufficient, especially the witnesses were incredible; 6) the district court erred in enhancing defendant's sentence for his leadership role, for possession of a dangerous weapon, and for obstruction of justice; and 7) venue was improper. On August 5, 2002, the Fourth Circuit issued an opinion affirming Petitioner's sentence and conviction. United States v. Amu, 43 Fed. Appx. 571 (4th Cir. 2002). Petitioner filed a petition for writ of certiorari with the Supreme Court which was denied on December 9, 2002. Amu v. United States, 537 U.S. 1078 (2003).

On December 9, 2003,[3] Petitioner filed the instant Motion to Vacate. In his Motion to Vacate Petitioner alleges that: 1) 21 U.S.C. § 841 is unconstitutional; 2) he was erroneously sentenced for his leadership role, possession of a dangerous weapon, and obstruction of justice; 3) the United States and his three attorneys failed to inform him of his right to contact his consulate; 4) his right to a fair and impartial jury was violated by the trial court's failure to conduct an inquiry into a juror comment; 5) a jury instruction requesting the jury "to seek the truth from the evidence" decreased the United States burden of proof; 6) his guilty plea was involuntary and unknowing; 7) his speedy trial rights were violated; 8) an 18 U.S.C. § 201(c) violation occurred; 9) the district court lacked jurisdiction over him; 10) his sentence violated Apprendi; and 11) he received ineffective assistance of counsel from all of his attorneys. On July

---

[3] In Houston v. Lack, 487 U.S. 266 (1988), the United States Supreme Court held that a pro se prisoner's notice of appeal is deemed filed as of the date on which a prisoner delivers the notice of appeal to prison authorities for forwarding to the district court. Id. at 276. Applying the reasoning of the Houston case to Petitioner's filing of his Motion to Vacate, Petitioner's Motion to Vacate would be deemed filed on December 9, 2003, the date he delivered it to prison officials for forwarding to the district court.

3

23, 2004, Petitioner filed a Motion to File Amended 2255 Motion requesting to add a <u>Blakely</u> claim to his Motion to Vacate.

## ANALYSIS

### I. ALREADY DECIDED ON DIRECT APPEAL

#### A. Constitutionality of 21 U.S.C. § 841

Petitioner alleges that the Supreme Court case of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), renders the federal drug statutes unconstitutional. Petitioner raised this precise claim on direct appeal where it was denied. Because issues fully litigated on direct appeal may not be relitigated in a subsequent § 2255 action, this claim is dismissed. <u>See</u> <u>Boechenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).

#### B. Apprendi Violation

Petitioner alleges that his sentence violated the principles set forth in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). Again, Petitioner raised this same issue on direct appeal where it was denied. So again, because issues fully litigated on direct appeal may not be relitigated in a subsequent § 2255 action, this claim is dismissed. <u>See</u> <u>Boechenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).

#### C. Sentencing Enhancements

Petitioner alleges this Court erred in enhancing his offense level on the basis of his alleged his leadership role, possession of a dangerous weapon, and obstruction of justice. Again, Petitioner raised this same issue on direct appeal where it was denied. So again, because issues fully litigated on direct appeal may not be relitigated in a subsequent § 2255 action, this claim is dismissed. <u>See</u> <u>Boechenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).

## II. **PROCEDURAL DEFAULT**

Petitioner did not raise his remaining substantive claims on direct review. Claims that could have been, but were not, raised on direct review are procedurally defaulted. In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of or must demonstrate a miscarriage of justice[4] would result from a refusal to entertain a collateral attack. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)(citing United States v. Frady, 456 U.S. 152, 167-68 (1982)). Ineffective assistance of counsel may constitute cause for default. See Wright v. Angelone, 151 F.3d 151, 160 & n.5 (4th Cir. 1998)(constitutional ineffective assistance of counsel establishes cause sufficient to excuse procedural default).

Petitioner asserts that his appellate counsel's ineffectiveness "caused" him to default his claims. A claim of ineffective assistance of counsel is governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a

---

[4] In order to establish a miscarriage of justice a petitioner must establish actual innocence. See Murrey v. Carrier, 477 U.S. at 496. Petitioner makes no argument in support of any claim of actual innocence.

strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290. The Court will address each of Petitioner's specific contentions below.

## A. Right to Contact Consulate

Petitioner alleges that the United States Government and his attorneys violated his due process rights when it failed to inform him of his right[5] under the Vienna Convention to contact the consulate. Petitioner contends that this failure violated his due process rights and that the "single remedy" for this violation is "the dismissal of the indictment and conviction with prejudice."

As noted above, Petitioner did not raise this issue on direct appeal and therefore he must establish that his appellate counsel was ineffective for failing to raise it on appeal.

At a minimum, Petitioner fails to establish that he was prejudiced by the failure to inform him of this right. Rather, than inform the Court how precisely he was prejudiced by the failure of his counsel to inform him of his right, in his Motion to Vacate Petitioner argues that such a

---

[5] This Court notes that it is not clear that the Vienna Convention confers on an individual the right to consular assistance following his arrest. See Breard v. Greene, 523 U.S. 371, 376 (1998)(noting only that the Vienna Convention "arguably confers an individual right); Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir. 1997)(noting that Vienna Convention could be setting out rights and obligations of signatory nation rather than the rights of individuals).

failure constitutes prejudice per se.[6] Petitioner cites no authority whatsoever for this contention and it is rejected by this Court. Indeed, this Court does not believe that the failure to contact Petitioner's consulate had an adverse effect on Petitioner's trial. This Court has no reason to believe that Petitioner's consulate could have offered him any assistance that his attorneys did not offer.[7] See Murphy v. Netherland, 116 F.3d 97, 100-01 (4th Cir. 1997)(holding Petitioner failed to establish prejudice with regard to his counsel's failure to contact foreign consulate); Gregory v. United States, 109 F. Supp. 2d 441 (E.D. Va. 2000)(failure to establish prejudice for ineffective assistance of counsel claim based upon Vienna Convention).

Petitioner has failed to successfully establish that his appellate counsel were ineffective for failing to raise on appeal the issue that his rights under the Vienna Convention were violated. As such he has failed to establish cause for his procedural default and his claim is dismissed.

### B. "Fool Proof" Juror Comment

Petitioner alleges that the trial court erred in its reaction to the "fool proof" comment that was overheard between two jurors. More specifically, Petitioner contends that this Court should have issued a specific admonition to the two jurors involved rather than just a general admonishment to the entire jury.

As noted above, Petitioner did not raise this issue on direct appeal and therefore he must

---

[6] In his reply brief Petitioner argues that if his consulate had been contacted he would have "obtained case-related information that would have at a minimum impeached government witnesses." Petitioner's vague and completely unsubstantiated assertion is not sufficient to establish prejudice.

[7] Petitioner provides no specifics as to what precisely his consulate would have done that would have likely changed the outcome of his trial. It is not a 2255 court's function to hold hearings to determine if evidence might exist.

7

establish that his appellate counsel was ineffective for failing to raise it on appeal.

During the trial, the interpreter reported to the Court that he had overheard a small portion of a conversation between two jurors. "As I opened the door, I bumped one of them with the door and said excuse me. And there were two jurors standing at the sink and I overheard one of them say" 'They're trying to make this thing foolproof.'" (Mot. Summ J., Ex. 3). The interpreter did not hear anything else. Defense counsel stated that it sounded like the jurors were violating the judge's order not to discuss the case. The judge understood their comment to be "foolproof" not "full proof," said that it could be taken either way, and opined that it was hard to evaluate what it meant. Id. The Court then stated that it would give the jurors a stronger admonition against discussing the case. Defense counsel did not object to this plan of action. At the next recess the Court admonished the jury as follows:

> I'll ask the jury please don't discuss the case, draw any
> conclusions, allow anyone to discuss it in your presence. Even
> sometimes a stray remark about the case, can be misinterpreted. So
> please don't make any comments about it, draw any conclusions
> until you've heard all the evidence, the arguments of counsel,
> instructions of the court.

Petitioner contends that the Court should have admonished jurors 5 and 7 specifically and not merely given a general instruction to the jury. He asserts that his counsel's failure to raise the trial court's error on appeal was ineffective and establishes the cause necessary to excuse his procedural default of the issue of the trial court's error.

The meaning of the "fool proof" comment is ambiguous – the juror could have been talking about something completely unrelated to the trial. Even if the juror were referencing the trial it is unclear who was the subject of his comment. Given the ambiguous nature of the juror's

8

comment it was not unreasonable for defense counsel not to seek a personal admonishment.

Furthermore, it is not clear to this Court, and Petitioner does not articulate, how a personal admonishment would have achieved a different result. Petitioner's blanket assertion of a need for a hearing to determine if he were prejudiced is wholly insufficient to support an ineffective assistance of counsel claim. See Fields v. Attorney General of Md., 956 F.2d 1290, 1297 (4th Cir.)(in an ineffective assistance of counsel claim the burden is on a petitioner to establish the requisite prejudice), cert. denied, 474 U.S. 865 (1995).

Petitioner has failed to successfully establish that his appellate counsel were ineffective for failing to raise on appeal the issue that the trial court erred in not specifically admonishing the jurors involved in the "fool proof" comment. As such he has failed to establish cause for his procedural default and his claim is dismissed.

## C. Erroneous Jury Instruction

Petitioner alleges that his due process rights were violated when the trial court instructed the jury "to seek the truth from the evidence." He contends that this instruction was tantamount to charging the jury with a preponderance of the evidence standard.

Again, Petitioner did not raise this issue on direct appeal and therefore he must establish that his appellate counsel was ineffective for failing to raise it on appeal. However, regardless of whether or not Petitioner can establish cause for failure to raise this issue on direct appeal, his claim fails on collateral review.

On collateral review of an allegedly erroneous jury instruction, federal courts must determine "whether the ailing instruction so infected the entire trial that the resulting conviction violated due process" not merely whether the instruction is undesireable, erroneous or even

universally condemned. Henderson v. Kibbe, 431 U.S. 145, 154 (1977)(quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973))(citation omitted). Accord United States v. Frady, 456 U.S. 152, 166, 169 & n.17 (1982)(extending Henderson to habeas petitions brought by federal prisoners). In reviewing an allegedly erroneous jury instruction, "[a] single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." United States v. Anderson, 987 F.2d 251, 259-60 (4th Cir. 1993)(citations omitted). When examining a reasonable doubt instruction, the Fourth Circuit "disfavor[s] any attempt on the part of the federal trial courts to define "reasonable doubt" and is "reluctant to reverse where the instruction as a whole in no way diluted the government's burden of proof." Truesdale v. Moore, 142 F.3d 749, 757 (4th Cir. 1998)(applying standard on collateral review). To determine whether a reasonable doubt instruction is constitutionally deficient, courts must ask "whether there is a reasonable likelihood" that the jury applied the instruction in an unconstitutional manner. See Adams v. Aiken, 41 F.3d 175, 179 (4th Cir. 1994). The context of the instruction can eliminate any concern that a constitutional error may have occurred. Adams, 41 F.3d at 180.

The contested instruction states in full:

> Justice through trial by jury must depend upon the willingness of each individual juror to seek the truth from the evidence presented to all jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as are now being given to each of you in these instructions of the court.

A similar instruction was given at the end of the instructions:

> [I]t is your duty to consider all the evidence, but also to consider all the arguments, the contentions and positions urged to you by the U.S. Attorney and defense counsel in their speeches to you and any other contentions that arise from the evidence and to weigh them in light of your common sense, and as best you can, to determine the truth of this matter.

10

The Court does not find that the above-referenced jury instructions diluted the government's burden of proof. This is particularly true when they are analyzed in the context of the jury instructions as a whole. Almost immediately after telling the jury to "seek the truth" from the evidence, this Court emphasized that:

> the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence because the burden of proving guilt beyond a reasonable doubt is always assumed by the government.

(Gov't Mot. Summ. J., Ex. 4 at p. 2). Then, after explaining the difference between direct and circumstantial evidence, this Court reiterated "after weighing all the evidence, if you are not convinced beyond a reasonable doubt, you must not find him guilty." This Court further explained that the jurors were required to presume that the defendant was innocent of the crimes charged and that this presumption is sufficient to acquit the defendant. The Court immediately explained:

> The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant because the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.
>
> The Government has the burden of proving every defendant in a criminal case guilty beyond a reasonable doubt. And if it fails to do so, you must find the defendant not guilty. While the government's burden of proof is a strict or heavy burden, it is not necessary that a defendant's guilt be proved beyond ll reasonable doubt. It is only required that the government's proof exclude any reasonable doubt concerning a defendant's guilt.
>
> A reasonable doubt may arise either from the evidence or from a lack of evidence. As stated earlier, you must consider only the evidence that I have admitted in this case. The term "evidence' includes the testimony of witnesses and the exhibits admitted into

11

the record.

(Gov't Mot. Summ. J., Ex. 4 at pp. 5-7). In addition to these examples, this Court repeatedly reiterated the government's burden of proving his guilt beyond a reasonable doubt throughout the jury instructions. See Gov't Mot. Summ. J., Ex. 4 at pp. 7, 11, 15, 16, 20, 21, 22, 23, 24, 26, 27, 29, 30, 31.

In conclusion, this Court does not, given the nature of the comment itself and given the context of the jury instructions as a whole, find that the "seek the truth" comment during jury instructions so infected the entire trial that the resulting conviction violated due process.

### D. Involuntary Guilty Plea/Speedy Trial Violation

Petitioner also alleges that his counsel was ineffective for coercing him into pleading guilty. First, Petitioner fails to provide any specifics as to why his guilty plea was involuntary. Rather, he makes broad, unsupported assertions that he was not properly advised of the charges against him and that he did not understand the charges he was pleading to and the consequences of his plea. Petitioner, however, fails to point out any specific deficiencies in his Rule 11 hearing. Moreover, after reviewing the record, this Court specifically found in a December 6, 1999, Order that Petitioner's plea was voluntary. In addition, Petitioner was permitted to withdraw his guilty and proceed to trial[8]. Therefore, he has failed to establish any prejudice and he has already received the remedy to which he would be entitled.

Petitioner next attempts to argue that his allegedly involuntary guilty plea resulted in the

---

[8] This Court's ultimate decision to permit Petitioner to withdraw his guilty plea was not a reflection of this Court's belief that his counsel had coerced him into pleading guilty. Rather, the decision was primarily based upon, the then recent decision of Apprendi v. New Jersey and the testimony of a witness asserting Petitioner's innocence. See February 14, 2001, Hearing Trans.

12

violation of his speedy trial rights. Petitioner highlights the fact that he was indicted on November 14, 1997, and that jury selection did not begin until approximately three and a half years later on May 22, 2001.

As noted above, Petitioner did not raise this issue on direct appeal and therefore he must establish that his appellate counsel was ineffective for failing to raise it on appeal.

According to 18 U.S.C. §3161(c)(1), the trial of a case must commence within seventy days of the initial appearance of a defendant. Section 3161(I) however, states that if a defendant's trial is delayed beyond the seventy days because defendant entered a guilty plea that was later withdrawn, "the defendant shall be deemed indicted . . . on the day the order permitting withdrawal of the plea becomes final." Id.

As noted above, Petitioner entered into a plea agreement with the Government that the Court permitted him to withdraw from on February 14, 2001. See 18 U.S.C. § 3161(i)(for speedy trial purposes, a defendant is deemed indicted at the time the order granting the withdrawal of the guilty plea becomes final). At that time, Petitioner's trial was set for the March 2001, criminal term. On March 6, 2001, Petitioner filed a motion to continue which the Court granted on March 9, 2001. 18 U.S.C. § 3161(h)(8)(A)( a period of delay resulting from a continuance granted by a judge is excluded from speedy trial calculations). As a result of Petitioner's request for a continuance, Petitioner's trial was rescheduled for the May 2001, criminal term. Jury selection began on May 22, 2001. Consequently, the procedure of the case does not support a conclusion that Petitioner's speedy trial rights were violated.

Petitioner tries to avoid this conclusion by broadly asserting that "any actions on the part of Mr. Yurko or Mr. Stroud were not in compliance with my intentions in this case." As this

13

Court found in its December 1999 Order, and again concludes, Petitioner's plea was voluntary.[9] Thus, his speedy trial time did not begin until February 14, 2001.

Petitioner filed a motion to continue on March 6, 2001, which the Court granted on March 9, 2001. As a result, the Court continued Petitioner's trial from the March 2001, term to the May 2001, term. In his supplemental motion, Petitioner attacks the decision of the Court to grant his March 2001, motion for a continuance. Petitioner insists a hearing or further inquiry should have been made as to the true necessity of granting the motion. This Court has reviewed the motion and Order and concludes that it did not improperly grant Petitioner's motion to continue. As such, this Court finds that Petitioner's speedy trial rights were not violated and thus his counsel was not ineffective for failing to raise this issue on appeal and therefore Petitioner has procedurally defaulted this claim.

### E. Illegal Testimony

Petitioner alleges that his conviction was obtained by the use of illegal testimony. More specifically, Petitioner alleges that the fact that each of the witnesses who testified against him was offered something of value for their testimony violated 18 U.S.C. § 201(c)(3).

As noted above, Petitioner did not raise this issue on direct appeal and therefore he must establish that his appellate counsel was ineffective for failing to raise it on appeal. However, because Petitioner's claim lacks legal merit, Petitioner cannot establish that he was prejudiced by his counsel's failure to raise this issue.

---

[9] Petitioner does not allege, and this Court did not locate, any reference by Petitioner in testimony or letters/motions that he did not wish his case to be continued for any length of time. Indeed, Petitioner's repeated requests for new counsel and to withdraw his guilty plea necessarily lengthened the time of his criminal proceedings.

14

In United States v. Richardson, 195 F.3d 192, 196-97 (4th Cir.1999), cert. denied, 528 U.S. 1096 (2000), the United States Court of Appeals for the Fourth Circuit held that the government did not violate § 201(c)(2) when it granted immunity, leniency, or entered plea agreements to obtain testimony. In so ruling, the Fourth Circuit noted that Congress has enacted a number of statutes authorizing and encouraging the United States, in its capacity as prosecutor, to offer leniency and immunity in return for testimony. Id. at 195 (citing 18 U.S.C. § 3553(e); 28 U.S.C. § 944(n); Fed. R. Crim. P. 35(a); and 18 U.S.C. §§ 6002-6003). The Fourth Circuit thus concluded that "Congress has followed a longstanding and consistent policy of authorizing and encouraging grants of leniency and immunity, in exchange for truthful testimony." Id. at 196.

Petitioner argues that the Richardson case does not resolve his claim because he is raising his claim under § 201(c)(3) not § 201(c)(2). Petitioner, however, cites no precedent for his argument. Moreover, such a ruling would completely undermine the above-stated established precedent.[10] See United States v. Levenite, 277 F.3d 454 (4th Cir. 2002).

Petitioner's counsels' failure to allege a § 201(c)(3) violation for which no controlling support existed does not constitute deficient performance under Strickland. Nor has Petitioner established that he would have prevailed if such an argument were raised and therefore has failed to establish that he was prejudiced by the failure to raise this issue. As such, Petitioner has procedurally defaulted this claim.

---

[10] As Respondent notes in it's Motion for Summary Judgment, a number of federal authorities expressly encourage witnesses to assist the government in the prosecution of others, including by giving testimony. See 18 U.S.C. § 3553(e); 28 U.S.C. § 944(n); Fed. R. Crim. P. 35(b). Such authorities would be void if § 201(c)(3) was interpreted to prohibit witnesses from receiving immunity or leniency for their testimony. Moreover, § 201(c)(2) an dRichardson would be meaningless if a witnesses actions in this scenario violated the law.

**F. Jurisdiction**

Petitioner also alleges that the district court lacked subject matter jurisdiction over him. More specifically, Petitioner alleges that the indictment failed to allege the jurisdictional element of interstate commerce.

As noted above, Petitioner did not raise this issue on direct appeal and therefore he must establish that his appellate counsel was ineffective for failing to raise it on appeal. However, because Petitioner's claim lacks legal merit, Petitioner cannot establish that he was prejudiced by his counsel's failure to raise this issue.

The United States Court of Appeals for the Fourth Circuit has specifically held that no interstate nexus is required to establish jurisdiction under § 841. That is, purely intrastate possession of drugs may be reached by the statute. See United States v. Leshuk, 65 F.3d 1105, 1111-12 (4th Cir. 1995)(rejecting Commerce Clause challenge to constitutionality of the Drug Act); United States v. Atkinson, 513 F.3d 38, 39-40 (4th Cir. 1975)(holding that Congress has the authority under the Commerce Clause to criminalize the intrastate possession, distribution, and sale of controlled substances). Consequently, Petitioner's claim is foreclosed by Fourth Circuit precedent. As such, Petitioner cannot establish that he was prejudiced by his appellate counsel's failure to raise this issue and this claim is procedurally defaulted.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Although Petitioner makes references to his trial counsels' failures[11] to challenge the issues discussed above, he usually references this failure in conjunction with excusing his

---

[11] Petitioner was, at different times, represented at the trial level by the following three attorneys: Lyle Yurko, Keith Stroud, and Christopher Fialko.

procedural default. Indeed, he asserts that "[t]he ineffective assistance of counsel issue is essentially to show "cause" to overcome the "double procedural default." Pet. Mot. Vac. p. 27. Errors by trial counsel, however, have no impact on a collateral review procedural default analysis.

To the extent Petitioner is trying to assert an independent claim of ineffective assistance of trial counsel, such claims would fail for the same reasons already articulated previously in this Order. At a minimum, Petitioner cannot establish the requisite prejudice for any of his claims and his ineffective assistance of counsel claims must fail.

## IV. **MOTION TO SUPPLEMENT SPEEDY TRIAL CLAIM**

Petitioner has filed a motion asking that he be allowed to supplement the speedy trial claim set forth in his original motion to vacate. For good cause shown, the Court will grant Petitioner's motion.

## V. **MOTION TO FILE AMENDED 2255 MOTION**

On July 23, 2004, Petitioner filed a motion requesting permission to add a claim based upon Blakely v. Washington, 124 S. Ct. 2531 (2004), to his pending Motion to Vacate.

As explained to Petitioner is this Court's April 26, 2004, Order, his March 29, 2004, request to add an additional claim was untimely. For the same reasons set forth in the Courts April 26, 2004, Order, Petitioner's Blakely claim is also untimely.

Moreover, to the extent that Petitioner is arguing that he should benefit from the calculation method outlined in § 2255, para. 6, subpart(3) based on a new rule announced by the Supreme Court in Booker, he is mistaken. The Supreme Court has explained that the one-year limitations period under subpart (3) can be broken into two clauses, the latter being more

significant than the former. Dodd v. United States, 125 S.Ct. 2478, 2482 (2005).

In particular, the Court stated that the two clauses of subpart (3) provide that: (a) the date on which a new right was initially recognized can be used as the date from which to calculate the one-year limitations period; (b) only "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. In other words, the second clause "imposes a condition on the applicability of the entire subsection" such that the provision does not apply at all if the newly recognized right has not been made retroactively applicable to cases on collateral review. Id at 2482.

In addition, even if Petitioner had timely filed his Blakely claim, it is not cognizable on collateral review. Petitioner's case became final on December 9, 2002, when the United States Supreme Court denied his certiorari writ. Because Blakely v. Washington, 124 S. Ct. 2531 (2004) and United States v. Booker, 125 S. Ct. 738 (2005), were decided after his conviction and sentence became final, in order to impact his sentence these cases would have to be determined to be retroactive on collateral review. However, the Supreme Court has not made the new rule announced in Booker retroactively applicable in the collateral review context. Furthermore, the Fourth Circuit has explicitly held that the rule announced in Booker is not retroactively applicable to cases on collateral review. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005).

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Petitioner's Motion to Supplement is **GRANTED**;

2. Petitioner's Motion to File Amended 2255 Motion is **DENIED**;

3. Respondent's Motion for Summary Judgment is **GRANTED**; and

4. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DISMISSED**.

This the ___ day of March, 2006.

/s/ James C. Cacheris
James C. Cacheris
United States District Judge